## STATE v. MELLETTE.

1.  A deed being in fact a mortgage, one who, with knowledge of this, takes an assignment of the note and a quitclaim deed from the mortgagee, gets merely the lien of the mortgage, under Comp. Laws, § 3243, as incident to the transfer of the note.

2.  Defendant, surety on a note. gave a mortgage in the form of a deed to secure it.   Plaintiff, with knowledge of the facts, took an assignment of the note, with a quitclaim from the mortgagee.   Plaintiff then, without the knowledge or consent of defendant, receipted for the property on the back of the note, and sent it to her, she retaining it, and remained silent.   Held, that she was not estopped to assert the deed to be a mortgage, her conduct amounting at most to a contract to convey, invalid under Comp. Laws, § 3245, because not in writing.

3. The legislature having, under Const. art. 3. § 24, no power to release or
     extinguish a liability to the state, Laws 1897, c. 84, attempting to re-
     lease any rights of the state in certain lands, is inoperative.

(Opinion filed Nov. 26, 1902.)

Appeal from circuit court, Codington county. Hon.
JULIAN BENNETT, Judge.

Action by the state of South Dakota against Margaret W.
Mellette. Judgment for plaintiff, and defendant appeals. Re-
versed.

*George W. Case* and *C. X. Seward,* for appellant.

*John L. Pyle,* Atty. Gen., for the State.

HANEY, P. J. This is an action to determine adverse
claims to certain real property located in Codington county.
Plaintiff alleges that it owns and is entitled to possession of the
premises, but that the defendant is in possession under claim
of title. Defendant admits being in possession, denies plain-
tiff's ownership, alleges ownership in herself, and avers that
the state is estopped from claiming any interest in the prem-
ises by reason of the passage of a certain joint resolution by
the legislature in 1897. The evidence discloses: That defend-
ant, who then owned the property, conveyed the same, her
husband joining in the conveyance, to W. W. Taylor, on Janu-
ary 19, 1893, to secure a note previously given by her husband
to Taylor for $15,200, upon which she was surety. That, while
this conveyance was absolute in form, it was in fact a mortgage;
that W. W. Taylor, who was state treasurer, and upon whose
official bond the defendant's husband was a surety, defaulted
in January, 1895, to an amount exceeding $350,000. That leg-
al proceedings subsequently resulted in a judgment against

Taylor and his bondsmen for the amount of such defalcation. That in August, 1895, Taylor delivered to Hon. Coe I. Crawford, then attorney general for the state, the Mellette note, and a quitclaim deed purporting to convey the premises in question, his wife joining in the deed. That when this note and deed were received by the attorney general he had actual notice that the deed from defendant to Taylor was in fact a mortgage. That in December, 1896, the note was transmitted to the defendant by mail, accompanied by the following letter, signed by the attorney general: "Dear Madam: I have the honor herewith to hand you a certain promissory note dated at Watertown, South Dak., Jan. 15, '93. signed by A. C. Mellette and M. W. Mellette, for the sum of $15,200, payable to the order of W. W. Taylor. and due on or before Jan. 15, '94, with interest at 7 per cent. per annum. This note was delivered to the state of South Dakota with certain other property by W. W. Taylor, late defaulting treasurer of South Dakota, on the 5th day of August, 1895. Certain real estate deeded by you and by the Hon. A. C. Mellette to W. W. Taylor was by Taylor deeded to the state. The appraised price of your real estate and that of Hon. A. C. Mellette which could be applied upon the note at the appraised price equaled the appraised value of the note as per indorsement. I therefore, with the consent of the state board of appraisal, have the pleasure of returning this note to you as satisfied." That when the note was so transmitted to and received by the defendant the following indorsement was on the back thereof: "Aug. 5, 1895. By homestead at Watertown from Margaret W. Mellette, and lots at Lake Kampeska from her, appraised at $5,390, Mitchell lots $400, and bal. paid in real estate taken from A. C. Mellette as per appraised price.

W. W. Taylor." That defendant received the note and accompanying letter, and retained the same, without objection, until after this action was commenced; and that the defendant has not orally or in writing conveyed or relinquished any of her rights in and to the property in controversy. As the conveyance from defendant to Taylor, though absolute in form, was in fact a mortgage, and that fact was known to the attorney general when the note it secured was received, the state clearly became the assignee of the mortgage, so far as defendant's rights are concerned. The deed from defendant to Taylor conveyed no title. It did not give Taylor possession or the right to possession. It merely created a lien. Association v. Dowling, 10 S. D. 535, 74 N. W. 436. The quitclaim deed from Taylor to the state passed no title, because Taylor had none. The transfer of the note carried with it as an incident the lien of the mortgage given to secure it, Comp- Laws, § 3243; Association v. Dowling, 10 S. D. 540, 74 N. W. 438. There is, therefore, no escape from the conclusion that the state merely acquired a lien upon the defendant's property, unless she is estopped by her conduct from showing that the deed to Taylor was in fact a mortgage. The question is not whether she released her right of redemption as might arise in a case where title to the property vested in the mortgagee. When the defendant received the note with its indorsements and the letter of the attorney general, she was in or entitled to possession, and as against the state was the absolute owner of the property, subject only to the lien of the mortgage given to secure her husband's note. Did her silence and retention of the note operate to transfer the title? Certainly not. She was the owner of certain real property, upon which the state held a

mortgage securing a debt due from her husband. Being will-
ing to accept the property in partial satisfaction of the debt,
the state, without her knowledge or consent, receipted for the
property on the back of the note, and sent it to the defendant,
who retained it without expressing either approval or disap-
proval. It requires more than this to foreclose a mortgage or
make a valid transfer of real property in this state. "An es-
tate in real property other than an estate at will or for a term
not exceeding one year, can be transferred only by operation
of law, or by an instrument in writing, subscribed by the party
disposing of the same, or by his agent thereunto authorized by
writing." Comp. Laws, § 3245. The defendant is not estop-
ped from asserting that the deed to Taylor was in fact a mort-
gage. Essential elements of an estoppel in pais are wanting.
There was no concealment of the fact on her part. The state
had actual knowledge of the fact when it accepted the note and
quitclaim deed from Taylor, It was not induced to accept the
same by reason of defendant's conduct. It received precisely
what it understood it was receiving, namely, a debt, secured by
a mortgage upon the defendant's realty. Viewing the subse-
quent conduct of the defendant in the light most favorable to
the plaintiff, assuming that her retention of the note under the
circumstances attending its surrender amounted to an implied
assent to the offer of the state to exchange the note for the
land, nothing more resulted from the transaction than a con-
tract to convey real property, which was invalid, because not
evidenced by an instrument in writing, subscribed by the party
disposing of the same, or by her agent thereunto authorized in
writing. Comp. Laws, § 3245. If the state has any claim
whatever upon the property in controversy, it is merely a lien,

the extent of which depends upon the amount of the debt secured thereby, which has not been heretofore extinguished,

The joint resolution relating to this property passed in 1897 (Laws 1897, c. 84) was ineffectual for any purpose. The legislature has no power to release or extinguish, in whole or in part, the indebtedness, liability, or obligation of any corporation or individual to the state or to any municipal corporation therein. Const. art. 3, § 24. If there was no existing liability or obligation to the state, the joint resolution was unnecessary. It could not extinguish what did not exist. If any obligation existed, the legislature was without power to release it.

To what extent, if any, the plaintiff's lien continues to exist should be determined in an action where the issues are presented by appropriate pleadings. Under the liberal laws of this state relating to amendments, we think the court below might properly have allowed the plaintiff to amend its complaint by alleging the facts necessary to establish and foreclose its mortgage. Murphy v. Bank, 13 S. D. 501, 83 N. W, 575.

The judgment is therefore reversed, with directions to either dismiss or grant leave to amend the complaint, as the lower court may deem just and equitable, should application for such leave be made.